UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

NICOLE HELFERICH,                        Case No. 25-10194

     Plaintiff,                         Hon. F. Kay Behm
v.                                       United States District Judge

GLYMED PLUS, L.L.C., and JON             Hon. Kimberly G. Altman
MCDANIEL,                                U.S. Magistrate Judge

     Defendants.
_____ /

**OPINION AND ORDER ON DEFENDANT'S
MOTION TO DISMISS FOR LACK OF
<u>PERSONAL JURISDICTION (ECF No. 6)</u>**

## I.   PROCEDURAL HISTORY

This matter is before the court on Defendants GlyMed Plus, L.L.C.

("GlyMed") and Jon McDaniel's (McDaniel) Motion to Dismiss for Lack

of Personal Jurisdiction (ECF No. 6) under Rule 12(b)(2) of the Federal

Rules of Civil Procedure.  Plaintiff Nicole Helferich (Helferich), a

resident of Michigan, filed this civil action in Oakland County Circuit

Court on or about December 23, 2024, against both Defendants.  ECF

No. 1.  She filed a First Amended Complaint that same day (adding

exhibits to an identical complaint).  ECF No. 13.  Defendants removed

to the Eastern District of Michigan on January 21, 2025.  Defendants

1

brought this motion to dismiss on grounds of personal jurisdiction on
February 11, 2025, and the motion is fully briefed.  ECF No. 6
(Defendants' Motion); ECF No. 10 (Response); ECF No. 12 (Reply).  A
hearing was held on May 21, 2025, at which counsel for all parties
appeared, and this opinion follows.

For the reasons discussed below, the court **DENIES** Defendant's
motion to dismiss and **DENIES** Plaintiff's request for fees.

## II.   FACTUAL BACKGROUND

This case arises out of Nicole Helferich's claims that while
working for GlyMed, its President and CEO Jon McDaniel sexually
harassed her.  She brings claims for quid pro quo sexual harassment,
hostile work environment, retaliation, disparate treatment based on
gender, and gender discrimination under the Michigan Elliot-Larsen
Civil Rights Act (ELCRA), Mich. Comp. Laws §§ 37.2101 *et seq.*, as well
as whistleblower retaliation under the Michigan Whistleblower's
Protection Act, Mich. Comp. Laws §§ 15.361, *et seq.*, and negligent
hiring and supervision.

Helferich makes several claims as to McDaniel's behavior, not
only directed at her but also at other female employees who are not
parties to this lawsuit.  For purposes of this motion brought on

2

jurisdictional grounds, the court limits the facts to those involving only the parties in this case.  The following facts are taken largely from Helferich's First Amended Complaint and attached exhibits, and are accepted as true for purposes of this motion under Rule 12(b)(2), where the court is not holding an evidentiary hearing to establish the truth of the statements made.  *See Mkt./Media Research, Inc. v. Union-Tribune Pub. Co.*, 951 F.2d 102, 105 (6th Cir. 1991).

GlyMed operates as a skin care company selling topical skin care products, serums, and creams to medspas, estheticians, and physicians. ECF No. 13, PageID.170.  Helferich has been employed with GlyMed since 2002, beginning her employment with the company as a sales representative.  *Id.* at PageID.171.  Helferich primarily performed her duties from her residence in Oakland County, Michigan.  *Id.* at PageID.170.

GlyMed is a limited liability company (LLC) organized and existing under the laws of the state of Utah, with its principal place of business in Utah.  The LLC has two individual members – Christine Heathman and Jon McDaniel – both of whom are residents of the State of Utah.  ECF No. 1-4, PageID.37.  McDaniel is GlyMed's current president and co-CEO.  ECF No. 13, PageID.195; ECF No. 1-4,

PageID.37.  Heathman is McDaniel's mother, GlyMed's co-owner, and co-CEO.  ECF No. 13, PageID.198.  GlyMed conducts business throughout the United States and internationally.  ECF No. 13, PageID.193.

On October 21, 2021, Plaintiff was promoted to the Director of Sales and Business Development, responsible for all sales activity in the United States, and Defendant McDaniel became her direct supervisor. ECF No. 13, PageID.195.  As part of her role, she was also responsible for recruiting sales employees.  *Id.* at PageID.197.  Helferich says that GlyMed used The Predictive Index (a personality assessment test) when hiring personnel.  She alleges that "Defendant McDaniel used this system to profile female candidates and ensure that financially vulnerable women were hired.  Specifically, single and/or divorced mothers or women with amiable personalities.  Defendant McDaniel obsessed over the personality results."  *Id.* at PageID.197.

Helferich alleges that McDaniel "continuously made comments to GlyMed female employees about their sex lives with their spouses." ECF No. 13, PageID.199.  He "objectified [] GlyMed female employees from 2020 through 2024 by discussing female employees' and clients' breasts and looks."  *Id.*  For example, McDaniel frequently described his

4

ex-girlfriend's breasts to Plaintiff and another GlyMed employee. *Id.* Another GlyMed employee allegedly reported McDaniel's harassment to Plaintiff, resulting in McDaniel withholding Plaintiff's commission reports (it is unclear whether this also involved McDaniel withholding the commission payments themselves). ECF No. 13, PageID.200.

McDaniel also allegedly tried to incorporate firearms into work activities, and asked Helferich if she would accompany him to his private property to shoot guns. McDaniel became angry when Plaintiff informed him that the request made her uncomfortable. *Id.* at PageID.198.

In April 2024, Helferich, McDaniel, and some other GlyMed colleagues attended the 2024 International Spa Association (ISPA) conference at the Phoenix Convention Center in Phoenix, Arizona. McDaniel asked for Helferich's room key to change in her room and said that he would "leave a chocolate on Plaintiff's hotel room pillow," which she took as a proposition for sex and made her uncomfortable. *Id.* at PageID.201. Because he was her immediate supervisor, however, she agreed, and after he changed, he left a chocolate on her pillow. *Id.* During the conference, McDaniel followed this up with repeated comments about how he planned to leave "a day earlier than everyone

else to have sex with and 'impregnate' his wife," who is also a GlyMed employee. *Id.* at PageID.200-01. Due to McDaniel's behavior and comments at the conference, Plaintiff alleges that a rumor went around that she and McDaniel were having an affair – a rumor which then got back to McDaniel's wife, GlyMed's head of human resources. *Id.* at PageID.200, 202. Helferich says that in May 2024, McDaniel screamed at her, and that McDaniel and his wife both refused to include her on department meetings, undermined her at company meetings, and gave negative evaluations of her to colleagues and co-owner Heathman. *Id.* at PageID.202. Plaintiff reported McDaniel's actions to Heathman. *Id.* Helferich alleges that due to the mental health issues and stress stemming from McDaniel's continued harassment, she was off work from June 10, 2024, through August 2, 2024, using her paid time off leave for compensation. *Id.* Shortly after returning to work, on August 2, 2024, McDaniel issued a retaliatory written reprimand to Plaintiff that she alleges was baseless. *Id.* at PageID.203. The reprimand itself is labeled "Final Warning" and references allegedly deficient work performance – specifically, that Helferich allowed a certain customer account to exceed their credit limit and took time off without prior approval. *See id.* at PageID.218.

6

On August 5, 2024, Plaintiff reported to Defendant McDaniel that she needed time off from work because of work stress.  McDaniel told Plaintiff that GlyMed lacked a medical leave policy, but sent an email to Plaintiff stating that she must complete short-term disability documents by August 12, 2024, or that otherwise she would be terminated from her employment with GlyMed.  *Id.*  Helferich alleges that she reported McDaniel's communications to Heathman, who assured Plaintiff that she would not be disciplined and that Heathman would rectify the situation.  In these communications, Heathman allegedly admitted that McDaniel violated company policy and had been harassing Plaintiff and other employees.  On August 19, 2024, McDaniel sent an email to Plaintiff suspending her without pay until further notice.  Later that evening, Heathman reversed McDaniel's decision and assured Plaintiff that she would continue to receive her regular pay.  *Id.*  On August 27, 2024, GlyMed's counsel issued correspondence to Plaintiff stating that the suspension was under review, and that she needed to submit additional documentation to support a leave of absence.  *Id.*; *see also* ECF No. 13, PageID.230 (letter from GlyMed's counsel to Helferich).  Helferich alleges that Heathman repeatedly assured Plaintiff that her job was safe, told her "not to worry

about" the documentation, and that she would address the harassment Plaintiff suffered from McDaniel.  ECF No. 13, PageID.203-04.  On September 12, 2024, Plaintiff, through her counsel, sent email correspondence to GlyMed's counsel seeking a conference call to discuss Plaintiff's employment issues.  Following a conversation with GlyMed's counsel on September 16, 2024, Plaintiff's counsel sent additional email correspondence stating that Plaintiff was suffering from workplace harassment and emotional distress.  GlyMed's counsel allegedly did not respond to the September 16, 2024, email correspondence, and on October 10, 2024, Defendant McDaniel sent a written correspondence to Plaintiff placing her on administrative leave without pay.  This decision was not reversed by Heathman and Plaintiff has received no pay since October 2, 2024, which Helferich alleges effectively ended her employment and was a constructive discharge.  Plaintiff alleges a variety of damages, including compensatory damages from loss of income and benefits and from mental and emotional distress.

## III.  STANDARD OF REVIEW AND APPLICABLE LAW

### A.   *Types of Personal Jurisdiction*

Personal jurisdiction can be either general or specific.  General jurisdiction exists when the defendant's affiliations with the forum state

are "so continuous and systematic as to render" the defendant "essentially at home" there. *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011) (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)) (cleaned up).

The court understands Plaintiff only to be arguing that specific personal jurisdiction exists, not general, in accordance with the many courts holding that similar situations do not render a corporation "at home" in a state just by having sales representatives there. *See Nichols v. G.D. Searle & Co.*, 991 F.2d 1195, 1198, 1200 (4th Cir. 1993) (denying general jurisdiction over defendant who had 17 to 21 employees in the state); *Gilbert v. Eli Lilly & Co. (In re Darvocet, Darvon & Propoxyphene Prods. Liab. Litig.)*, No. 2: 11-md-2226-DCR, 2012 U.S. Dist. LEXIS 55235, at *51 (E.D. Ky. Apr. 18, 2012) ("[T]he mere presence of a corporation's sales representatives in a forum state is insufficient to establish [general] personal jurisdiction over the company").

Specific jurisdiction, on the other hand, "depends on an 'affiliation between the forum and the underlying controversy,' principally, activity or an occurrence that takes place in the forum State and is therefore subject to the State's regulation." *Goodyear Dunlop Tires Operations, S.A.*, 564 U.S. at 919 (quoting citation omitted). "A federal court sitting

in diversity may not exercise jurisdiction over a defendant unless courts of the forum state would be authorized to do so by state law—and any such exercise of jurisdiction must be compatible with the due process requirements of the United States Constitution." *Int'l Techs. Consultants, Inc. v. Euroglas S.A.*, 107 F.3d 386, 391 (6th Cir. 1997). In a diversity action such as this one, there is a two-part test for determining whether the court may exercise specific personal jurisdiction over a non-resident defendant. First, the court must determine whether jurisdiction is authorized under the forum state's long-arm statute. *See Air Products & Controls, Inc. v. Safetech Int'l Inc.*, 503 F.3d 544, 550 (6th Cir. 2007). Under Michigan's long-arm statute, specific jurisdiction may be exercised over a corporation if, for example, it (1) transacts any business within the state; (2) does or causes an act to be done, or consequences to occur, in the state resulting in an action for tort; or . . . (5) enters into a contract for services to be rendered or for materials to be furnished in the state by the defendant. Mich. Comp. Laws § 600.715. If jurisdiction is authorized under the state's long-arm statute, then the court must also determine whether the exercise of jurisdiction comports with constitutional due process. *Air Products*, 503 F.3d at 550. Because Michigan's long-arm statute

10

extends to the limits of due process, these two inquiries merge into one and the court "need only determine whether the assertion of personal jurisdiction . . .  violates constitutional due process." *Aristech Chem. Int'l v. Acrylic Fabricators*, 138 F.3d 624, 627 (6th Cir. 1998) (internal quotation marks and citation omitted); *Michigan Coalition of Radioactive Material Users, Inc. v. Griepentrog*, 954 F.2d 1174, 1176 (6th Cir. 1992).

The Sixth Circuit has established a three-part test for specific jurisdiction to determine if application of a state's long-arm statute meets due process:

> First, the defendant must purposefully avail himself of the privilege of acting in the forum state or causing a consequence in the forum state.
>
> Second, the cause of action must arise from the defendant's activities there.
>
> Finally, the acts of the defendant or consequences caused by the defendant must have a substantial enough connection with the forum state to make the exercise of jurisdiction over the defendant reasonable.

*Southern Machine Co. v. Mohasco Indus.*, 401 F.2d 374, 381 (6th Cir. 1968); *see also Beydoun v. Wataniya Restaurants Holding, Q.S.C.*, 768 F.3d 499, 505 (6th Cir. 2014) (applying the *Southern Machine* test).

"Purposeful availment" is the "constitutional touchstone" of specific personal jurisdiction. *Neogen Corp. v. Neo Gen Screening, Inc.*, 282 F.3d 883, 889 (6th Cir. 2002). The "'purposeful availment' requirement ensures that a defendant will not be haled into a jurisdiction solely as a result of 'random,' 'fortuitous' or 'attenuated' contacts or of the 'unilateral activity of another party or third person.'" *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475 (1985) (internal citations omitted); *see also Sullivan v. LG Chem., Ltd.*, 79 F.4th 651, 671 (6th Cir. 2023). "Jurisdiction is proper, however, where the contacts proximately result from actions by the defendant himself that create a 'substantial connection' with the forum State." *Id.* (citation omitted and emphasis in original). Where a defendant "has created 'continuing obligations' between himself and the residents of the forum, he manifestly has availed himself of the privilege of conducting business there." *Id.* at 476 (internal citation omitted). In addition, physical presence in a forum state is not required, and the Supreme Court has "consistently rejected the notion that an absence of physical contacts can defeat personal jurisdiction there." *Id.* (citations omitted).

B.    *Standard of Review on Rule 12(b)(2) Motions*

12

Motions to dismiss under Rule 12(b)(2) involve burden shifting. The plaintiff must first make a prima facie case, which can be done merely through the complaint. *Malone v. Stanley Black & Decker, Inc.*, 965 F.3d 499, 504 (6th Cir. 2020) (citing *Am. Greetings Corp. v. Cohn*, 839 F.2d 1164, 1169 (6th Cir. 1988)). The burden then shifts to the defendant, whose motion to dismiss must be properly supported with evidence. *Theunissen v. Matthews*, 935 F.2d 1454, 1458 (6th Cir. 1991). Once the defendant has met the burden, it returns to the plaintiff, who may no longer "stand on his pleadings but must, by affidavit or otherwise, set forth specific facts showing that the court has jurisdiction." *Id.*

Within that burden-shifting framework, however, a district court has discretion in how it resolves a 12(b)(2) motion. *Malone*, 965 F.3d at 505; *Serras v. First Tenn. Bank Nat. Ass'n*, 875 F.2d 1212, 1214 (6th Cir. 1989). "If it decides that the motion can be ruled on before trial, the court 'may determine the motion on the basis of affidavits alone; or it may permit discovery in aid of the motion; or it may conduct an evidentiary hearing on the merits of the motion.'" *Serras*, 875 F.2d at 1214 (quoting *Marine Midland Bank, N.A. v. Miller*, 664 F.2d 899, 904 (2nd Cir. 1981)). The court's choice affects the plaintiff's burden. *Id.* If

13

the court holds an evidentiary hearing and the defendant's motion is properly supported with evidence, the plaintiff must overcome it by a preponderance of the evidence.  *See Dean v. Motel 6 Operating L.P.*, 134 F.3d 1269, 1272 (6th Cir. 1998).  But "[w]hen the district court 'rules on written submissions alone' the burden consists of 'a prima facie showing that personal jurisdiction exists.'"  *Schneider v. Hardesty*, 669 F.3d 693, 697 (6th Cir. 2012) (quoting *Serras*, 875 F.2d at 1214).  "Dismissal in this procedural posture is proper only if all the specific facts which the plaintiff . . . alleges collectively fail to state a prima facie case for jurisdiction."  *Theunissen*, 935 F.2d at 1458.  This rule prevents a defendant from defeating personal jurisdiction by simply filing an affidavit contradicting the jurisdictional allegations of the complaint.  A defendant may, however, invoke the court's discretion to order a pretrial evidentiary hearing, just as a plaintiff may move for jurisdictional discovery.  *Malone*, 965 F.3d at 505-6 (district court erred by crediting defendant's controverting affidavit without first allowing any form of discovery); *see also Taco Mamacita, LLC v. Wilco Holdings, LLC*, No. 1:21-cv-62, 2022 U.S. Dist. LEXIS 197078, at *8 (E.D. Tenn. Oct. 29, 2022).

## IV.  ANALYSIS

A.    *Specific Personal Jurisdiction*

The first question to determine whether specific jurisdiction has been satisfied is whether the complaint states a prima facie showing of jurisdiction.  *Schneider*, 669 F.3d at 697.  Answering this question "requires a plaintiff to establish, with reasonable particularity, sufficient contacts between the defendant and the forum state to satisfy the relevant long-arm statute and the Due Process Clause."  *Malone*, 965 F.3d at 504; *MAG IAS Holdings, Inc. v. Schmückle*, 854 F.3d 894, 899 (6th Cir. 2017); *Neogen Corp. v. Neo Gen Screening, Inc.*, 282 F.3d 883, 887 (6th Cir. 2002).

1.    *GlyMed Plus*

With this in mind, the court turns to GlyMed first, and the *Southern Machine* test: (1) whether GlyMed purposefully availed itself of the privilege of doing business in Michigan, (2) whether Helferich's injury arises out of or relates to GlyMed's activities in Michigan, and (3) whether the consequences caused by GlyMed's actions were sufficiently connected to Michigan to make this court's jurisdiction reasonable.  *See Malone*, 965 F.3d at 503 (referencing the *Southern Machine* test, 401 F.2d 374, 381); *Ford Motor Co. v. Mont. Eighth Judicial Dist. Court*, 592

U.S. 351, 362 (2021) (rejecting a strict causal relationship between the defendant's activities and plaintiff's injury).

Helferich is a resident of Michigan; GlyMed is principally located in Utah.  Nonetheless, GlyMed was aware of who it was communicating with, who it was employing, and where she lived.  Helferich alleges that she was not merely working remotely for GlyMed in Michigan by happenstance.  She alleges that she was a sales representative for GlyMed in Michigan, and cultivated significant business in Michigan on GlyMed's behalf since 2002.  ECF No. 13, PageID.171; ECF No. 10-2, PageID.111; ECF No. 10-2, PageID.129-31 (list of Michigan accounts).  She alleges that GlyMed sought her as an employee not simply because of her qualifications, but because of her location.  *See* ECF No. 10-2, PageID.110 ("My Michigan residency was a factor in GlyMed's recruitment for the Michigan sales position.").  In 2021, she started her new role as GlyMed's Director of Sales and Business Development.  ECF No. 13, PageID.172.  In that role, she was not only responsible for recruiting employees, but also "responsible to generate [sic] new business and grow existing accounts," including that she "[e]xecute existing contracts and own the renewal, solidify, and expand existing customer relationships[,]" and "[m]aximize account penetration via full

16

touch & in-depth customer selling." ECF No. 10-2, PageID.125-26 (Job description). So, Helferich says, her location and sales experience in Michigan specifically were still considered by GlyMed when she was promoted or hired into that more national role. *See id.* at PageID.113 (even after taking on the national Director role, "*I was both the Director[] of Sales and the only sales representative for territory 5006* [Michigan].") (emphasis in original). Helferich alleges that GlyMed and McDaniel directed her to cultivate these relationships, even while in her new national role; for example, she held "an On Boarding Series where, twice a month, Zoom meetings were held with Michigan clients to attempt to expand GlyMed's business with existing clients and gain new clients[,]" and that McDaniel specifically approved this series. ECF No. 10-2, PageID.112-13. Thus, she has alleged that GlyMed expected her to continue to grow her existing Michigan sales accounts even while it employed her in the Director of Sales role. Additionally, in her response to Defendant's motion, Helferich alleges that GlyMed occasionally sent trainers and co-owner Heathman to Michigan to assist with trainings on its Michigan accounts over the years, though often virtually in the post-covid timeframe. ECF No. 10, PageID.90, 112. The court does not consider GlyMed's contrary assertions. *See Malone*,

965 F.3d at 505 (6th Cir. 2020) (noting that controverting affidavits contesting jurisdiction are irrelevant when a court resolves a 12(b)(2) motion on the pleadings).  All of this indicates that GlyMed "purposefully availed" itself of Michigan's jurisdiction.

GlyMed, however, disputes that Plaintiff has met the purposeful availment prong, as well as the legal conclusion that their "contacts [are] related to the operative facts of the controversy."  ECF No. 12, PageID.164.  In their view, "[a]lthough GlyMed sells products and ships them to Michigan residents (and residents of many other states) from time to time, those sales are wholly unrelated to Plaintiff's claims. None of the events alleged in the pleading occurred in Michigan."  ECF No. 6, PageID.56.

At core, GlyMed's motion disputes the extent to which this court may exercise specific jurisdiction over an out-of-state corporation regarding sexual harassment alleged to have occurred primarily online, and directed against its in-state remote employee – when, as a fairly obvious matter, the alleged sexual harassment had little to do with the intended business of the corporation in this state (selling cosmetic products).  The court takes GlyMed's argument in two parts: first, that none of the sexual harassment, discrimination, or retaliation alleged in

the pleading occurred in Michigan.  *See* ECF No. 6, PageID.56 (arguing that "none of the events alleged" occurred in Michigan).  The first issue is straightforward – the amended complaint includes plenty of references to McDaniel's virtual contacts with Helferich while she was working for GlyMed in Michigan.  ECF No. 13, PageID.172, ¶ 24; *id.* at PageID.175, ¶ 44; *id.* at PageID.176, ¶ 46, 47, 50, 52; *id.* at PageID.179, ¶ 71, 75; *id.* at PageID.180, ¶ 79, 80, 82; *id.* at PageID.181, ¶ 88.  It is well-established that in the modern world of virtual communication, it is sufficient to say that the allegedly harassing conversations between McDaniel and Helferich happened "in" Michigan.  *See Power Invs., LLC v. SL EC, LLC*, 927 F.3d 914, 919 (6th Cir. 2019) ("that [the] defendant never entered" the forum state did not defeat jurisdiction given "[t]he reality that modern business often occurs electronically and by phone"); *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 476 (1985) ("Jurisdiction in these circumstances may not be avoided merely because the defendant did not *physically* enter the forum State.  Although territorial presence frequently will enhance a potential defendant's affiliation with a State and reinforce the reasonable foreseeability of suit there, it is an inescapable fact of modern commercial life that a substantial amount of business is transacted solely by mail and wire communications across

19

state lines, thus obviating the need for physical presence within a State in which business is conducted.").  The facts alleged in the amended complaint are sufficient to establish a prima facie showing that the allegedly discriminatory acts occurred in Michigan.

Defendants' second claim runs along the lines of this: to the extent that there is any connection between the harassing or discriminatory conduct to Michigan, that connection stems only from Plaintiff's unilateral decision to live there, and not from either of Defendants' purposeful availment of Michigan's jurisdiction.  Defendants argue that "[t]he only contact with Michigan relevant to this case stems from Plaintiff's own and unilateral decision to live in Michigan."  ECF No. 6, PageID.54.  This is a narrow view to take of their conduct here and of Michigan's jurisdictional limits, and the court disagrees that the limits of due process are so constrained.

To get one thing off the table up front; as far as GlyMed at times argues that its connection to Michigan is mere happenstance, *e.g.* ECF No. 6, PageID.66, that is an awfully cramped way of looking at their own conduct.  Accepting the facts in the complaint as true, GlyMed purposefully employed Helferich (who lived in Michigan) to sell their products in Michigan.  They allegedly occasionally held trainings in

20

Michigan to train sales reps on their Michigan accounts.  ECF No. 10, PageID.90.  Accepted as true, that situation is not, as GlyMed says, the product of Helferich's "unilateral" conduct.  *See, e.g.*, *Villano v. Shashamane Grp., LLC*, No. 2:23-cv-04320, 2024 U.S. Dist. LEXIS 1315, at *12-13 (C.D. Cal. Jan. 3, 2024) ("California is not merely the state where Villano unilaterally chose to reside at the time of her termination, but it is the market where Shashamane was affirmatively looking to expand its business by directing Villano to explore market opportunities. . . . Furthermore, . . . California was the forum where [Defendants] knew Villano resided when they subjected her to the alleged harassment and wrongful termination.").  The Sixth Circuit, too, has rejected similar attempts by corporations to distance themselves from their purposeful contact with Michigan.  *See AlixPartners, LLP v. Brewington*, 836 F.3d 543, 550 (6th Cir. 2016) ("[Plaintiff] accepted a job in which his duties were purposefully aimed at, and tied to, Michigan and its residents, Michigan was, at least in part, the focus of [plaintiff's] employment and the parties' relationship.").

Defendants' citations do not move the needle.  They cite *LAK, Inc. v. Deer Creek Enters.*, 885 F.2d 1293 (6th Cir. 1989), for the proposition that merely communicating with a local plaintiff is not enough to

establish personal jurisdiction.  *See* 885 F.2d at 1302.  In *LAK*, however, the defendant never had <u>any</u> particular contacts in Michigan and "had no continuing interest in profiting from the [Michigan] market."  *Id.* at 1302 (internal quotation marks and citation omitted) (alteration in original).  Here, GlyMed is alleged to have continuing business in Michigan at "over a hundred retailers" (ECF No. 10, PageID.102; ECF No. 10-2, PageID.129-131) and employed Helferich in Michigan since 2002; that "continuing interest in profiting from the Michigan market" is plainly distinguishable from the situation in *LAK*.  Similarly, Helferich's allegation that, even in her role as Director of Sales, at least some of her work was targeted at her Michigan customer accounts also distinguishes this case from those in which the company had no interest in the local market at all, and where therefore the plaintiff's activity could be more fairly characterized as "unilateral."  *Compare* ECF No. 10-2, PageID.125-26 (Helferich, who was known to live and work in Michigan and have existing Michigan customer accounts, was responsible for "grow[ing] existing accounts," including "existing customer relationships[,]"), *with Fields v. Sickle Cell Disease Ass'n of Am., Inc.*, 376 F. Supp. 3d 647, 653 (E.D.N.C. 2018), *aff'd*, 770 F. App'x 77 (4th Cir. 2019) ("Plaintiff's complaint does not allege that any work

she completed for defendant was targeted at or involved North

Carolina."), *and Embry v. Hibbard Inshore, LLC*, No. CV 19-1474, 2019

WL 2744483, at *3 (E.D. La. July 1, 2019), *aff'd sub nom.* 803 F. App'x

746 (5th Cir. 2020) ("[P]laintiff does not allege that Hibbard ever

directed him to reach out to potential clients in Louisiana or that it

hoped to target businesses in the state.").  Defendants also cite *Walden*

*v. Fiore*, 571 U.S. 277 (2014) to argue that in that case, "the Supreme

Court found an absence of specific jurisdiction in circumstances very

similar to those here."  But any similarity between that case and this

one is superficial, at best.  In that case, plaintiffs were Nevada

residents who complained about their arrests in the Atlanta, Georgia

airport.  The defendant in that case "never traveled to, conducted

activities within, contacted anyone in, or sent anything or anyone to

Nevada[,]" so jurisdiction was not proper. *Walden*, 571 U.S. at 289.  In

contrast, this case on its face involves frequent communication between

Defendants and Helferich throughout her time working for GlyMed in

Michigan for the purpose of selling to the Michigan market.  *See*

*AlixPartners*, 836 F.3d at 548 (noting the defendant's "semi-regular"

contact with his supervisors in the forum state via email and phone

calls); *Air Prods. & Controls, Inc. v. Safetech Int'l, Inc.*, 503 F.3d 544,

551 (6th Cir. 2007) ("Defendants reached out beyond Kansas' borders to conduct business with a company whose principal place of business it knew to be in Michigan.  Such contacts are not 'random,' 'fortuitous,' or 'attenuated,' but are the result of deliberate conduct that amounts to purposeful availment.").  *Walden* has no applicability to this case. GlyMed has "purposefully availed" itself of Michigan's jurisdiction in its continued contacts with Helferich, who it knew to be in Michigan and allegedly expected her to continue to manage her Michigan sales territory on GlyMed's behalf.

So perhaps a better way to characterize GlyMed's position is that all of their sales-related conduct directed at Michigan – which, whatever GlyMed says, is plainly enough to show their purposeful availment of Michigan's market – is not "related to" the substance of Helferich's sexual harassment and gender discrimination claims, which in GlyMed's view could have occurred anywhere.  They say, for example, that Helferich's claims would be exactly the same if she lived in, say, New York.  ECF No. 6, PageID.54 ("If she had chosen to live in Florida, Mexico, or Guam, the circumstances of her claim, and her interaction with GlyMed and McDaniel, would have been identical.").  Respectfully, that completely misses the point; if Helferich had lived in New York and

she had alleged the exact same pattern of behavior and conduct there, then yes, Defendants would also be subject to personal jurisdiction in New York because McDaniel and GlyMed would still be aware of where Helferich resided and worked, they would still be directing her sales activity at the state's market, and McDaniel's conduct would still have been intentionally directed at her while knowing she resided there. *See Williams v. Preeminent Protective Servs., Inc.*, 81 F. Supp. 3d 265, 271-72 (E.D.N.Y. 2015) ("While defendants may not have sought a unique benefit when they transacted business in New York, they nevertheless 'availed' themselves of the forum when they hired plaintiff to conduct their marketing and communications while she lived in Brooklyn[.]"). GlyMed's argument that she might have been harassed in Florida if she had lived there instead does not lead to the conclusion that she couldn't also sue in Florida.  Or, to put it more bluntly: an out-of-state employer can't avoid being brought into Michigan district court for allegations of sexual harassment directed at its Michigan employee by saying, "well, he would have harassed her wherever she was."

GlyMed's arguments that the alleged harassment is functionally separable from their other conduct in Michigan seems to "touch on a question that has divided the circuits: whether *Calder*'s 'express aiming'

25

inquiry[1] includes *all* jurisdictionally relevant intentional acts of the defendant or only those acts that are intentional *and* alleged to be tortious or otherwise wrongful." *Druskinis v. StopAntisemitism*, No. 2:23-cv-13046, 2024 U.S. Dist. LEXIS 219511, at *15-16 (E.D. Mich. Dec. 4, 2024) (citing *Tamburo v. Dworkin*, 601 F.3d 693, 704 (7th Cir. 2010) (detailing circuit split) (internal quotation marks omitted)). "[T]he Sixth Circuit has not yet expressly weighed in on which view it favors[,]" *id.*, but this court finds the former (and broader) view of jurisdiction more convincing, particularly in light of the Supreme Court's more recent decision in *Ford Motor Co. v. Mont. Eighth Judicial Dist. Court*, 592 U.S. 351 (2021).  In that case, Ford did substantial business in Montana and Minnesota, but argued that it was not subject to personal jurisdiction for two motor vehicle accidents in those states because the particular cars involved were not sold in those states (nor were they designed or manufactured there).  The original owners had instead resold their cars to buyers in-state.  Ford argued that there was no causal connection between its own activities in-state and the actual

---

[1] *See Calder v. Jones*, 465 U.S. 783, 789 (1984) ("[P]etitioners are not charged with mere untargeted negligence.  Rather, their intentional, and allegedly tortious, actions were expressly aimed at California.").

controversy before the court.  The Court disagreed: "None of our precedents has suggested that only a strict causal relationship between the defendant's in-state activity and the litigation will do. . . . [O]ur most common formulation of the rule demands that the suit 'arise out of *or relate to* the defendant's contacts with the forum.'"  *Ford Motor Co.*, 592 U.S. at 362 (emphasis in original).  That language suggests that the inquiry includes all of the Defendants' jurisdictionally relevant acts, not just those which specifically gave rise to the claim at issue.  *See also Druskinis*, 2024 U.S. Dist. LEXIS 219511, at *16 ("[C]ourts may consider both intentional tortious conduct *and* a party's other contacts with the forum, . . . where the parties had a preexisting business relationship.") (citing *Air Prods. & Controls, Inc. v. Safetech Int'l, Inc.*, 503 F.3d 544, 552-53 (6th Cir. 2007) ("the existence of intentional tortious conduct . . . 'enhances' a party's other contacts with the forum state for purposes of a purposeful availment analysis")).

Whatever the exact formulation of the rule may be in this circuit, the district courts have found personal jurisdiction over a defendant corporation in similar circumstances, where the conduct complained of "arises out of" the ongoing contacts created by the employment relationship.  In *Dugger v. Honeywell Int'l, Inc.*, No. 1:21-cv-00892, 2021

U.S. Dist. LEXIS 240089 (N.D. Ohio Dec. 16, 2021), a Cleveland-based

plaintiff was supervised by her Texas-based manager. *Dugger*, 2021

U.S. Dist. LEXIS 240089, at *2. There, the court found purposeful

availment by an out-of-state employer because the Texas supervisor

"maintained ongoing and persistent supervision of an Ohio-based

employee[,]" and that relationship and supervision of Ohio-based

conduct resulted in "sufficient 'virtual contacts' with Ohio." *Id.* at *21-

22. As a result, the defendants could be haled into Ohio district court

for the plaintiff's gender-based discrimination claim, particularly where

the effects of the tortious injury—*i.e.*, lost commission wages and

termination of employment— were in Ohio. *Id.* at *13. Similarly, in

*Morton v. Advanced PCS, Inc.*, 3:04-CV-278, 2006 U.S. Dist. LEXIS

54423, 2006 WL 2222683, *1-2 (E.D. Tenn. Aug. 2, 2006), the court

concluded that the defendants, a Texas-based employer and their HR

manager, had purposefully availed themselves of Tennessee law

because: (1) the manager worked for a company that did business in

that state, even if the company was headquartered elsewhere; (2) she

managed a remote employee (plaintiff) who worked within the

Tennessee and conducted weekly telephone calls with that employee;

28

and (3) she decided to discriminatorily terminate the plaintiff-employee's employment in Tennessee.

A variety of out-of-circuit district court decisions agree; see, for example, *Wallens v. Milliman Fin. Risk Mgmt. LLC*, 509 F. Supp. 3d 1204 (C.D. Cal. 2020). There, a remote supervisor based in Massachusetts was held to be subject to personal jurisdiction in California in a suit by a plaintiff-employee for sexual harassment, gender discrimination, and retaliation because the defendant-supervisor maintained ongoing contact with the plaintiff-employer via email, phone calls, and text messages "directed" at the plaintiff in California. *Wallens*, 509 F. Supp. at 1216. The court also noted that the plaintiff-employee was managed at all times by the defendant-supervisor, who was alleged to have engaged in discriminatory conduct that was felt within the forum state. *Id.* As such, the court concluded that purposeful availment had occurred, and the exercise of personal jurisdiction was both reasonable and foreseeable. *See also McGechie v. Atomos Ltd.*, No. 2:22-cv-01812-DJC-DB, 2024 U.S. Dist. LEXIS 42462, 2024 WL 1054924, at *4 (E.D. Cal. Mar. 11, 2024) ("[C]ourts have found purposeful direction where the defendant employs the plaintiff in the forum state, and then acts intentionally to support the plaintiff's

29

employment in the state or commits intentional acts against the plaintiff like harassment, discrimination, retaliation, or termination."); *Doe v. McAdam Fin. Grp. LLC*, No. 22-CV-00113, 2022 U.S. Dist. LEXIS 150555, at *16 (S.D.N.Y. Aug. 3, 2022) ("Where out-of-state managers and supervisors 'knew' their employee plaintiff 'worked from New York, permitted her to do so,' 'regularly communicated with her via email, phone, and virtual meeting for a sustained period of time' of multiple years, and 'facilitated her remote work by sending her a company laptop and . . . issuing her a cell phone with a New York number,' [] those managers and supervisors purposefully availed themselves of the privilege of conducting business in New York.").

This court joins the many district courts that have had no trouble finding the exercise of personal jurisdiction reasonable in similar situations. Here, GlyMed's supervisors regularly communicated with Helferich in Michigan, knew she worked in Michigan, and facilitated her remote work. Helferich has submitted a declaration that, on behalf of GlyMed, she "continued to be responsible for the sales for Michigan accounts through the date of [her] constructive discharge." ECF No. 10-2, PageID.111; *see also, e.g.*, ECF No. 10-2, PageID.113 (Helferich Declaration) ("During some of these [Zoom] meetings, McDaniel and I

would discuss Michigan customer accounts."). GlyMed's intentional, knowing employment of Helferich in Michigan, and direction of her continuing sales efforts at Michigan accounts, establish purposeful availment of Michigan's jurisdiction. Further, much of the discriminatory conduct alleged occurred in Michigan, and its most serious effects were felt in Michigan. These acts "arise out of" and "relate to" the employment relationship and GlyMed's supervisor's contacts with Helferich, and make the exercise of jurisdiction reasonable. In this case, due process and principles of fair play do not demand that a Michigan employee must go to where the corporation is at home to vindicate her rights as an employee. The employment relationship as a whole is alleged to be fundamentally associated with, tied to, and directed at the state of Michigan. In conducting significant business in Michigan and supervising this employment relationship to facilitate that business in Michigan, GlyMed "enjoys the benefits and protection of [Michigan's] laws"—the enforcement of contracts, the defense of property, and the resulting formation of effective markets. *Ford Motor Co*, 592 U.S. at 367. All that assistance to GlyMed's in-state business creates reciprocal obligations—most relevant here, that GlyMed be subject to Michigan's employment laws and jurisdiction, at

least as to those employees that GlyMed purposefully employed in Michigan and suits arising out of those employment relationships. *See id.* GlyMed's contacts, via its supervisory relationship with Helferich, meet the "minimum contacts" necessary for personal jurisdiction and are sufficiently connected to Michigan to make the exercise of jurisdiction over her sexual harassment claim reasonable. *See Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945).

If it were the case that every discrete instance of alleged harassment occurred while Helferich was not in Michigan, the answer might be different. For example, in *Hardell v. Vanzyl*, 102 Cal. App. 5th 960 (2024), a state court found no specific jurisdiction for sexual harassment in California when the plaintiff who worked in California only alleged discrete acts of harassment occurring while she was in Florida. *Hardell*, 102 Cal. App. 5th at 970-71; *see also Fields v. Sickle Cell Disease Ass'n of Am., Inc.*, 376 F. Supp. 3d 647, 652 (E.D.N.C. 2018), *aff'd*, 770 F. App'x 77 (4th Cir. 2019) ("the alleged actions by defendant occurred in other states, such as the disparaging remarks allegedly made by Banks at the 2015 Sickle Cell National Conference in Maryland, or being ordered to work by Banks while plaintiff was ill on a business trip to Nevada").

32

Here, Helferich does allege some events happening out-of-state (for example, the conference in Arizona).  But Helferich does not <u>only</u> allege acts of sexual harassment occurring in other states – she also, significantly, alleges that she was continuously expected to engage in sexual banter with McDaniel in her communications from Michigan, and that when she reported the behavior (from Michigan), she was constructively discharged (in Michigan), the effects of which are felt in Michigan.  The court can fairly exercise jurisdiction over her claims. *See Yahoo! Inc. v. La Ligue Contre Le Racisme*, 433 F.3d 1199, 1207 (9th Cir. 2006) ("If a jurisdictionally sufficient amount of harm is suffered in the forum state, it does not matter that even more harm might have been suffered in another state."); *cf. Calder*, 465 U.S. at 790 (finding that "the brunt of the injury would be felt" where the plaintiff lived and worked); *e.g. Bd. of Forensic Document Exam'rs, Inc. (BFDE) v. ABA*, No. 16-cv-2641, 2017 U.S. Dist. LEXIS 18806, at *29 (W.D. Tenn. Feb. 9, 2017) (citing *Yahoo!*).

Under the burden shifting framework, the court stops there. When resolving a 12(b)(2) motion on written submissions alone, the burden on the plaintiff is only a prima facie showing.  *Schneider v. Hardesty*, 669 F.3d 693, 697 (6th Cir. 2012) (quoting *Serras*, 875 F.2d at

1214).  Neither party has presented a dispute necessary to invoke this

court's discretion to conduct discovery or conduct an evidentiary hearing

beyond the oral argument the court ordered on this motion.  When

asked at oral argument whether they would like discovery or an

evidentiary hearing on this issue, both parties represented to the court

that the motion could and should be resolved on the written pleadings

alone.  Defendants later retracted that statement, but on the sole issue

of whether Helferich was GlyMed's only sales representative in

Michigan (GlyMed indicated that she was their only sales

representative in Michigan; Plaintiff disputed that and indicated there

were at least a few other people).  The court does not see this as a key

issue on which the jurisdictional question turns.  If Helferich were

GlyMed's only sales representative in Michigan (as Defendants argue),

that would cut both ways – true, GlyMed would have only had one

employee in Michigan and that, perhaps, would indicate less strong

evidence in favor of broad purposeful sales activity in Michigan, but

that fact would also strengthen the inference that GlyMed relied on

Helferich's physical presence in Michigan to be the *sole* person

maintaining its customer relationships with Michigan accounts, and

that reliance on her specific connection to Michigan would help

34

establish specific jurisdiction over her claims.  Regardless of how many other sales employees there are, Helferich still has alleged that she has worked in Michigan for her twenty-plus year career with GlyMed, that all of her virtual contacts with the company over were while she was in Michigan, that the company supported her remote work in Michigan, that she was hired in this new national role in part because she cultivated accounts for GlyMed's products in Michigan, and that she continued to work on at least some of her Michigan accounts in her new role.  That is sufficient to show specific jurisdiction over her claims, no matter how many other GlyMed employees or sales representatives happen to be in Michigan (and even if there are, in fact, none).

Because that was the only issue of fact on which any party invoked the need to conduct jurisdictional discovery, and the court finds that dispute unnecessary to resolve to answer the jurisdictional question, the court stops at the first step, considers only the written pleadings, and does not consider any of GlyMed's contrary assertions. *See Malone v. Stanley Black & Decker, Inc.*, 965 F.3d 499, 505 (6th Cir. 2020) (noting that controverting affidavits contesting jurisdiction are irrelevant when a court resolves a 12(b)(2) motion on the pleadings).

The court finds the *Southern Machine* test satisfied, and GlyMed's motion is therefore denied.

### 2.   *McDaniel*

The analysis as to McDaniel largely tracks the above.  McDaniel is GlyMed's CEO and President, and he is alleged to have been the person harassing Helferich and the primary driver for the retaliation against her.  He was well-aware where Helferich was located, and the primary effects of his frequent in-state communications with his direct-report were in Michigan.

Defendants try to avoid that obvious conclusion by flipping the script: "[a]s for McDaniel, Plaintiff wrongly conflates or attempts to impute GlyMed's actions to him."  ECF No. 12, PageID.166.  That fundamentally misunderstands the core of the case; McDaniel is alleged to have sexually harassed Plaintiff directly.  GlyMed is alleged to be vicariously liable for *McDaniel*'s conduct and for its own conduct in the face of Helferich's report of that harassment, not the other way around. The conclusion that GlyMed had sufficient contacts with Helferich flows

partly from McDaniel's contacts with Helferich as her supervisor.[2]  That

conclusion does not require the odd result that McDaniel himself is not

subject to Michigan's jurisdiction.  Just as McDaniel's contacts with

Helferich support the exercise of jurisdiction over GlyMed, his contacts

also support the exercise of jurisdiction over himself.  *See, e.g.*, *Dugger*,

No. 1:21-cv-00892, 2021 U.S. Dist. LEXIS 240089, at *2 (N.D. Ohio Dec.

16, 2021) (denying motion to dismiss by supervisor on personal

jurisdiction grounds).  While the court does not consider McDaniel's

assertions that he has never physically entered Michigan, it does not

matter, because his virtual contacts with Helferich are sufficient on

their own.  *See ALS Scan, Inc. v. Digital Serv. Consultants, Inc., 293

F.3d 707, 712 (4th Cir. 2002)* (drawing a line between (a) "[p]assive

[i]nternet activity" and (b) "directing electronic activity into the State

with the manifested intent of engaging business or other interactions in

the State").

Once more, Defendants' citations make no difference to this

conclusion.  They cite *Calder v. Jones*, 465 U.S. 783, 790 (1984), for the

---

[2] Under the Michigan Elliot-Larsen Civil Rights Act, "[a]n employer is
vicariously liable for the harasser's conduct if he is the employee's supervisor."
*Hylko v. Hemphill*, 698 F. App'x 298, 299 (6th Cir. 2017) (citing *Vance v. Ball State
University*, 570 U.S. 421 (2013)).

statement that a defendant employee's "contacts with [a state] are not to be judged according to their employer's activities there." ECF No. 12, PageID.166. Not only do Defendants make no attempt to actually apply that statement to McDaniel, they also ignore the very next sentence of *Calder*: "On the other hand, their status as employees does not somehow insulate them from jurisdiction." *Calder*, 465 U.S. at 790. Plaintiff's First Amended Complaint sets forth not only GlyMed's contacts with Helferich in Michigan (which include McDaniel's contacts with Helferich as its agent and CEO); it *also* establishes McDaniel's contacts with Michigan on his own behalf as a tortfeasor. To the extent that those actions overlapped at times, "the mere fact that the actions connecting [him] to the state were undertaken in an official rather than personal capacity does not preclude the exercise of personal jurisdiction over [him]." *Balance Dynamics Corp. v. Schmitt Indus.*, 204 F.3d 683, 698 (6th Cir. 2000). "[W]here an out-of-state agent is actively and personally involved in the conduct giving rise to the claim," the exercise of personal jurisdiction depends on the ordinary analysis of purposeful availment, reasonable foreseeability, and fair play; the agent cannot insulate himself from liability by recasting his actions as those of the company. *See id.*; *Calder*, 465 U.S. at 790; *see also WCR, Inc. v.*

*Western. Can. Heat Exchanger, Ltd.*, No. 3:18-cv-278, 2021 U.S. Dist.
LEXIS 106964, 2021 WL 2336575, at *5 (S.D. Ohio June 8, 2021)
("Although [defendant's] actions were taken in a corporate capacity, he
was actively and personally involved in the conduct giving rise to the
claims." Therefore, the exercise of personal jurisdiction was proper.).
The court has explained how Helferich's allegations directly show
McDaniel's substantial personal involvement in the conduct giving rise
to her claim.

It bears emphasizing that Michigan's long arm statute permits
jurisdiction over a defendant who causes an act or consequence in the
state "resulting in an action for tort." Mich. Comp. Laws § 600.715.
"Though not usually referred to as a tort, 'discrimination claims have
always been characterized as a species of statutory tort[.]'" *Stough v.
Jett Sett Mgmt. Servs.*, Nos. 274167, 275441, 276618, 2008 Mich. App.
LEXIS 630, at *18 (Ct. App. Mar. 25, 2008) (quoting *Mack v Detroit*, 467
Mich. 186, 194 n 6; 649 N.W.2d 47 (2002), *superseded on other grounds
by* Mich. Comp. Laws § 600.2912(e)). McDaniel is alleged to have
sexually harassed Helferich and then constructively discharged her in
Michigan as a result of her reporting the harassment. Michigan's long
arm statute explicitly encompasses tortious actions whose effects are

felt in-state; the only question is whether that reach satisfies due process. McDaniel knew that Helferich resided in Michigan and purposefully availed himself of Michigan's jurisdiction in both his personal and official capacity over a period of many years, including several years in which he allegedly directly supervised and communicated with her, and directed her sales activities in Michigan. Helferich claims that he sexually harassed her by abusing the supervisory relationship, and it does not offend traditional notions of fair play and substantial justice to expect McDaniel to defend this suit in Michigan. McDaniel's motion to dismiss based on personal jurisdiction is therefore denied.

### B. Request for Fees

In addition to responding to Defendants' jurisdictional motion to dismiss, Helferich further asks this court to award her fees for responding to this motion on grounds that it is frivolous, presumably under 28 U.S.C. § 1927, since the request is not brought in a separate motion under Rule 11. ECF No. 10, PageID.105. Title 28 U.S.C. § 1927 provides that any attorney "who so multiples the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees

reasonably incurred because of such conduct."  Sanctions are warranted under § 1927 "when an attorney objectively 'falls short of the obligations owed by a member of the bar to the court.'  While subjective bad faith is not required, the attorney in question must at least knowingly disregard the risk of abusing the judicial system, not be merely negligent." *Kidis v. Reid*, 976 F.3d 708, 723 (6th Cir. 2020) (quoting *Carter v. Hickory Healthcare Inc.*, 905 F.3d 963, 968 (6th Cir. 2018)). "Under this provision, a court may impose sanctions 'when an attorney knows or reasonably should know that a claim pursued is frivolous, or that his or her litigation tactics will needlessly obstruct the litigation of nonfrivolous claims.'" *Fharmacy Records v. Nassar*, 572 F. Supp. 2d 869, 879 (E.D. Mich. 2008) (citing *Jones v. Cont'l Corp.,* 789 F.2d 1225, 1230 (6th Cir. 1986)).

The court finds that the question of personal jurisdiction raised by Defendants was sufficiently reasonable that it was not needlessly obstructive.  Accordingly, the request for sanctions is **DENIED**.

## V.   CONCLUSION

Because this court concludes from Plaintiff's allegations that she has made a prima facie showing supporting the exercise of personal jurisdiction over both GlyMed and McDaniel, their motion to dismiss for

lack of personal jurisdiction is **DENIED**.  The court also **DENIES**

Plaintiff's request for sanctions.

     **SO ORDERED**.


Date: June 3, 2025        <u>s/F. Kay Behm</u>
                    F. Kay Behm
                    United States District Judge